The second case today is case number 411-1145, Bohl v. State Farm, for the appellant Bruce Beeman for the appellee, Craig Unrath. Mr. Beeman, you may proceed. Thank you very much. As I guess you know already, my name is Bruce Beeman, and I represent the plaintiff, Cynthia Bohl, in the underlying case, and now the appellee. I told her before I came here, I said, like I say to every client, well, you can come if you want. And to my surprise, she said, I'd be interested in seeing how it works. So she came, and she's seated over there. I have to tell you, when I got the judge's order in this case, and he said, summary judgment, there's no facts in dispute, I had to say, are you kidding me? There's no facts in dispute, because I have all the facts on my side. They have nothing. The whole case is, I still do not understand how the trial court judge could possibly come to the conclusion that summary judgment was a reasonable decision in this case. There was some discussion about the standard of review in the case, which is kind of interesting. And I'm not sure what it is, after reading it, because there are two appellate court cases that say, although it's summary judgment is de novo, and the Supreme Court had said it as long as I've been a lawyer, and longer, for some cases, two appellate court cases say it's not, but they really didn't tell you why. There's no underlying reason why. So I'm thinking we should go with the Supreme Court that says it's de novo, but especially since there's no underlying explanation of why you would change it in this particular instance. But as I said in my materials, no matter what standard you use, the facts are all on the side of Cynthia Bohl. And here's why. I ask myself, can you win a case solely on cross-examination? And as a general proposition, you can. That is a correct statement. You can. But it's a general proposition. In a case involving a complicated medical diagnosis, we know that you need expert testimony to prove causation. As I pointed out under Brown v. Baker, in the Hyatt v. Cox cases, if you're in an accident and your arm gets severed, your head gets cut off, or you get a huge cut on your head, you don't need expert testimony to prove causation. Now you might say, well, that applies to the plaintiff. And it arguably only applied to the plaintiff until 1999, when the Supreme Court came out with the Voykin case. And in Voykin, the Supreme Court told us, if you want to prove causation, the defendant has the same burden of proof, the same standard of causation as the plaintiff. They have to prove by expert testimony. If they think it was a, your hip wasn't injured, it was all your back all along, they have to bring in somebody to say this. They can't just surmise this. They can't speculate this. That you can't cross-examine your way out of this unless you could get admission from one of the doctors that, well, yeah, I guess it's possible that more likely than not, maybe this incident did not aggravate her hip to the point where she needed a hip replacement surgery. If you could do that on cross-examination, you'd have a conflict in the medical testimony. And yeah, you would have a good position as a defendant winning the case. I don't think you'd have a summary judgment position, but at least you'd have a position where you could possibly win the case solely on cross-examination. The other way would be to get your own doctor, to go out and hire a doctor, which is done with some feeling by, I think, both plaintiffs and defense counsels. Sometimes that's not always, well, not always the best result, but you can do it. In this case, they did it. He said, and what did that doctor say? He's an orthopedic surgeon. I mean, he's a neurosurgeon. He said, you know, this is a complicated situation here. I'm a neurosurgeon, but I can't say this. I'd have to be an orthopedic surgeon to really say whether the accident did or did not aggravate her hip to the point where she needed hip replacement surgery. So what do we get from the defense? Well, the defense says, here's their argument in a nutshell, is stated on page 16. Well, let me go to page 8 of your brief, and I don't, it seems like the issues you say are presented for review, the first two, are issues where, as if the Supreme, or the trial court, had granted summary judgment for you, and they were appealing it. I don't understand. You say the first issue is whether a bona fide dispute exists, where an insurance-owned company refuses to settle a claim, the company never, at any time, presented any medical testimony, et cetera. Correct. That's not the issue. And that's not an issue that presented by this appeal in all of this to me, and I don't understand why you even mention that. The issue is, is there a genuine issue, a material fact, regarding this question? The trial court said there wasn't. You say there is. And therefore, summary judgment was not properly granted, which is argument three. Why are you bothering with arguments one and two, which is as if you were defending the grant for motion for summary judgment to yourself? Well, I guess the reason I'm doing this is, this case is so clear that summary judgment should not have been granted, that I'm hoping, I mean, if it is... Well, you never filed a motion for summary judgment. I never did. So there's no issue before us about, we should reverse the trial court and grant summary judgment for you, because there isn't one before us, however unusual that would be in any event. Isn't that right? That would be unusual. You are right. That would be very unusual. I did not ask for summary judgment. You know, should I have? Maybe I should have. But I didn't. I'm saying the grant was improper. So the question is, is there a genuine issue, a material fact, before the trial court so as to defeat their motion? Was the trial court granted? And I've set that out in my brief, that all the evidence favors the plaintiff. And that's...  Pardon? Except for Mr. Mead's affidavit. Well, if he was a lawyer, I mean, if he was an orthopedic surgeon or a doctor, he said, in my opinion, it's failed back syndrome. Well, first of all, you have to be an expert witness to even have an affidavit with an opinion. That's... It's clear law that you cannot state an opinion in an affidavit unless you're a qualified expert. Mr. Mead, although he's a very fine person and a good friend of mine, he's not a doctor. He can't state what it was failed back syndrome. I mean, that's... I've never seen such a thing. He's in... Then, in his own, in his statement that it's failed back syndrome, he says, my conclusion is it's failed back syndrome. Well, you can't have a conclusion in an affidavit either. So his whole affidavit should have been stricken. It should not have been considered. And I pointed this out. I argued that for reasons that are mystifying to me, the court did not strike his affidavit. But it shouldn't be considered. It shouldn't be considered by this court. That's one of the reasons we're here. There's material facts. If the affidavit is stricken, does that then leave the defendant with nothing by way of evidence? Well, my position is the defendant has nothing even with the affidavit because the affidavit is incompetent. I understand that. But if you strike it, yeah. So I guess the right question would be, yes, if you strike it, you're saying they have nothing. They have nothing. Absolutely nothing. Nothing. They have not... According to Voigt, they have to have an expert. Arguably, any expert could still look at the medical records and form an opinion based thereon. So I suppose that could still happen if the trial court were to permit late inclusion of expert affidavit, couldn't it? Well, I would think if that happened, if the court said, we're going to reopen evidence of an arbitration hearing that took place, what, two years ago? No, we're just going to... The arbitration hearing isn't an issue here. The issue is whether or not State Farm had a reasonable basis upon which to deny this claim about the hip injury. Right, and they had their chance to prove that, and they failed. They haven't had a trial yet, and the trial court, has the trial court cut off all discovery in this case? Well, I don't know the answer to that. Your point is, Meade is no expert, and they haven't provided any expert. That's correct. To answer Justice Sterner's question, State Farm could go back and actually ask a doctor other than the one they had, who says, hey, I'm a neurosurgeon, not an orthopedist, to say, will you look at these records? What do you think? If they came up with an expert, they still could, couldn't they? I mean, it's technically feasible. I suppose anything is technically feasible. I would be shocked if the judge said, okay, you lost on your arbitration. I ruled you won because there's no material facts, but I'm going to let you go get a second IME. First of all, I don't think there's any provision in the code for a second IME. They get one shot at the apple. They have it. So I would strenuously object to them going back. Otherwise, you could have ten IMEs. Finally, you might hit on somebody who's... Well, just to clarify, for sake of argument, say you win today on this appeal. It goes back for a determination on whether State Farm acted unreasonably or vexatiously. Isn't that really, then, the only issue before the court? That is. That is exactly right. But my argument would be, if that happened and it came back, State Farm can't now come in with a new doctor they never consulted with before and use that doctor to bootstrap a position they took two years ago. Well, but that would be a question for the trial court. It's not before us at this point. I mean, I suppose he could allow it. The trial court has discretion, but how could you possibly justify such a move if you're a trial judge? That's why trial courts get the big bucks. But at this point, the only issue before us is the grant of their motion for summary judgment in which the court says there's no genuine issue of material fact in favor of State Farm because there was no connection between the hip matter and the hip surgery and the accident. Well, I would phrase it in saying that there are numerous issues of material fact, but it just so happens that none of them favor State Farm. And any of those issues of material fact, couldn't it be that the trial court viewed that evidence favorable to you, but that cumulatively, even with the evidence in your favor, there was no proof that State Farm acted unreasonably or vexatiously? That's impossible. And here's why. That's impossible? That's impossible, and here's why. State Farm admitted in their brief. Here's on page 13, the bottom of 13, page 14. Here's their brief. State Farm concluded its arbitration memorandum with a statement that Bull should be compensated for accident day medical care treatment for cervical spine, carpal tunnel syndrome, and for pain and suffering. That's right on page 13 and 14 of their brief. All right, so did they pay that? No. They didn't even pay that bill that they're saying in their brief to you that they should have paid. They paid $1,500, $1,504.90 of the $2,646.80 that they admit they owed. So how can you stand in good faith when you admit you owe something, you stipulate to the reasonableness of that, you admit that it was caused from the accident, but you refuse to pay it? In fact, the defense, State Farm, sent a letter from me that I sent to Randy Milligan, who, frankly, he's always been a good adjuster, but in this case he said, well, why don't you waive this conflict of interest between the liability side of the defense and the medical pays so I can look at this and get this med pay resolved. I said, sure, and that letter's in the court here. I said, sure, Randy, go ahead and do that. I want to get this medical pay resolved. Never got paid. So there. The other thing is if you hire an expert witness and he gives you an opinion you don't like, that's not a good day for any lawyer. But then to withhold that thing, I keep writing letters and calling and saying, hey, where's this opinion? Give me this opinion. We're sending it back for a redo. We're not going to give it to you. Finally they realized after about the fourth letter or phone call that I'm not letting this issue go. I want to see this opinion. It was only after four months in violation of Supreme Court rules and in hiding the ball or attempting to hide the ball that they finally gave me this report at all. Under what standard is that not an unfair claims practice? How could that possibly be determined to be reasonable claims practice, not vexatious? I don't understand how the judge came to his summary judgment in any respect. If I did that, I would expect you guys to be pretty tough on me if I hid the ball. Hiding the ball is not what this is about. Hiding the ball is contrary to everything we learned. And that's what, although State Farm is generally a very good insurance company, they had a real adjuster on this, I think. Had a bad hair day? I think the adjuster in this case is hiding the ball. I'd get along with almost all of them. If I didn't, I'd probably be broke. In your suit against State Farm, what are you seeking? The penalties? The attorney's fees and costs, or do you want... Penalties. I want penalties and the attorney's fees and costs, the three trifecta, I guess. I'm seeking the penalties up to $60,000, attorney's fees and costs. And there was a question, I think the trial judge thought that there was a chance that the jury could award attorney's fees, and I don't agree with that either. And I don't think Mr. Unworth does. It would have to be the court determining it. I've never heard of a jury determining attorney's fees. Maybe it's happened, but I would think the court would do that part. None of that's before us, though, is it? None of that's before you. This is an odd opinion, an odd decision. And I was hoping it so odd that you would use your supervisory capacity to send it back and say, hey, Cynthia Bohl won this case, now let's just get the damages. That's what I was hoping by these other arguments. Well, that explains why we had the first two arguments that are in your briefs. That's true. You said $60,000 in penalties? I think that's the maximum. Okay. I think the statute, you know, I hate to misquote it, so it's in my brief. Whatever the maximum is. Oh, it is in your brief? Oh, yeah. Well, you have to quote the law. So, I mean, I put the statute in there. Let's see. It's statute of all page 12. That's the policy language. Wouldn't you know it? My pages are off. But I'll find it here. You don't have to find it. I think that's right. Yeah, it's a 60% of the amount which the court or jury finds such parties entitled to cover against the company, exclusive of all costs, or $60,000, whichever is lesser, plus attorney's fees. So you could get $60,000 as an absolute maximum or 60% of the amount which the court or jury finds the parties entitled to. So it's a lesser of those two. So, you know, if you don't, I think it would be good public policy to ask for penalties because hiding the ball, hiding my expert's report that says, you know what, we don't have any evidence otherwise, is not a good policy to set. It's not something to encourage. It's not something to allow someone to get away with. And that's what happened in this case. Pretty much all that's left to say, I guess. Okay. Thank you. You will have rebuttal. Please proceed. Thank you, Your Honor. Counsel. This case is based on a fairly simple proposition, whether an insurer's conduct can be construed as vexatious and unreasonable where there is a bona fide dispute concerning insurance coverage. Now, the plaintiff had said, well, it cannot be that we had a bona fide dispute. And the reason is, is that we were dealing with a complex, as I believe he said, a complex, complicated medical diagnosis. Well, that's actually our whole point here is that there was no complicated medical diagnosis. What we had was two treating physicians that he came forward with. They had their deposition testimony. And they came up with the following proposition. Before the accident, there was no evidence of arthritic hip pain. After the accident, 15 months after the accident, there was hip pain. Therefore, the accident must have caused the hip pain. And that's it. That's all the ad. That's not a complication. Well, now, stop me right there. To the extent that that's a fact in dispute that would serve to inform whether or not State Farm was vexatious, why doesn't that create a genuine issue of material fact? It's the genuine issue of material fact relates to causation in terms of, but it does not relate to whether we had a bona fide dispute. Who's supposed to decide that? The arbitrators decide whether there is a causation between the accident and the medical. On the vexatious matter, why isn't that a question for a jury to decide based upon all the facts submitted to them? Because the judge looked at this case, he saw that we were dealing with a very simple medical diagnosis that had no basis, and this was our argument. How can a judge decide that there's no basis for a medical diagnosis presented by two physicians in the absence of any contrary evidence to begin with on that very point on causation? Other than Mr. Mead's affidavit, then. What did we call it again? What syndrome? Failed Vag Syndrome? That's, you know, something that... Okay. How does a judge make that decision? The judge makes that decision by looking at whether we have a reasonable basis to dispute coverage Now, the judge made one significant point. He said there is nothing wrong with winning a case by beating up on your opponent's case. When your opponent fails to put forward a substantive case, this has no impact whatsoever on the determination of whether or not you have a bona fide dispute. In other words, we have every right to go before the arbitrators and say their case makes no sense. They have offered no peer-reviewed journals. They've offered no expert testimony other than the unsupported naked assertion that there was no pain before the accident and there was pain 15 months after the accident. That makes no sense. The judge has every right, Judge Kavanaugh had every right to look at that and say, you have a bona fide dispute. So the judge is deciding there's no genuine issue of material fact based upon his sense that this is just too long. I'm sorry, Your Honor, this is just too long? This 15 months is just too long. Notwithstanding the evidence they presented by the physicians? I think the judge has every right to do that, Your Honor. I think the judge has every right to look at this and say, does this invite scrutiny? Is this a sham? Is this feigned? Is State Farm making this up? Or is this something that could be a real dispute? Well, at trial, if this case goes to trial on was State Farm vexatious and unreasonable in denying coverage, what testimony, who would be testifying to what on the material issues in that case? If this case goes to trial, I think you'd pointed out something earlier. You said, is discovery still open? I suppose at that point we could bring in other witnesses. Well, let's assume it isn't and you can't, based on just the record before us. Who would be testifying on the question of whether this was vexatious and unreasonable delay by State Farm? We could certainly bring in our claims adjusters who would say this made no sense. Would Mr. Mead be permitted to testify? I can't imagine why we would call him, Your Honor. Well, of course, he's the one who, you know, 191A, this is supposed to be a substitute for in-court testimony. Is that how it works? Yeah. Assuming you wanted to call Mr. Mead to opine, is there anything about his testimony that, in fact, would be admissible? I can't imagine why we would want to bring his testimony. That's a diplomatic response, Mr. Unruh, but not actually responsive to the question. And I'd have to examine that, Your Honor. I don't know that the ---- In fact, he has nothing he can say about any of this. He'd be testifying to a medical opinion without any basis, and then he'd be testifying as to the opinion of whether or not the ultimate issue in the case. Gee, in your opinion, Mr. Mead, was State Farm being vexatious? No, I don't think so. I don't think Mr. Beeman would likely not object to that. I can't imagine how that could possibly be opinion testimony that would be admissible. I am absolutely certain he would object, Your Honor, and I have no doubt that we would deal with that when we cross that bridge. Can you suggest to me any basis now upon which that testimony could possibly be admissible? I cannot, nor can I suggest why we should bring in the affidavit of the third arbitrator. I believe her name was Grady, who explained her position. Again, Your Honor. Of course. I don't see the relevance here. What I do see is this, is that the judge has no right to look at the way, the manner in which we tried this case and evaluate the conduct of our trial attorneys and say, did you do a good enough job? Maybe you should have hired an expert. Maybe you should have brought in this witness. Maybe you should have asked this question on cross-examination. He didn't do that. Well, that's right. At trial, it's not the judge who would decide it. It would be for the trier effect based upon what your claims adjuster did and why, what he thought and why, whether he properly, on his basis, decided there was no connection, even though your IME guy didn't dispute the other expert medical testimony you had. Judge Kavanaugh's role was not to critique our trial attorney's strategy and their means of proving their case. We filed an arbitration brief that explained that there was no basis for the doctor's opinion, the treating physician's opinions, other than the naked assertion, unsupported by any peer-reviewed journals, any personal history. You mean their medical opinions were wrong? Every arbitrator sits in the place of a juror, and a juror is not required to leave their common sense on the courthouse steps. Yes, absolutely. But their medical opinions were so wrong as to strip Mr. Beeman and his lawsuit of any genuine issue of material fact, because these are worthy of no basis at all? I think that we have a bona fide dispute. We don't have to say that we have a winning dispute. We don't have to say that we have a dispute that we will prevail upon. What we need to show is that we have a substantial, bona fide, not feigned, and in good faith dispute. And we prove that in our arbitration brief. What does the arbitration brief have to do with this case? The arbitration brief is a demonstration of what we believe is the bona fide dispute in this case. Judge Kavanaugh cannot second-guess that and say, you should have done more, you should have gotten an expert witness, you should have put Dr. Chu on the stand. You're exactly right, which is why arguably Judge Kavanaugh should deny the plaintiff's motion for summary judgment. But how does that, Judge Kavanaugh not second-guessing, how does that possibly account for his granting your motion for summary judgment? The question before Judge Kavanaugh is very simple. Did you have a reasonable, bona fide dispute? We did. We litigated it. We brought to bear significant arguments showing that the treating physicians that the plaintiff was relying on, their testimony was contradictory and unworthy of belief. That is sufficient to create a bona fide dispute. Now, I'd also like to point out, this Court's decision in Morris states that where a reasonable and prudent person would believe before trial that an insurer had a reasonable dispute regarding coverage, a claim under Section 155 fails. The Court repeats that a number of times. The determination is made before trial. Now a plaintiff is saying that, well, I don't think you put on a strong enough case. And quite frankly, that lies in direct conflict with this Court's decision in Morris. The determination of whether you have a bona fide dispute is made by a reasonable man prior to trial. Now, we have every right to go to call the attention, to the arbitrator's attention, the fact that the medical treaters' opinions are nothing more than naked, baseless assertions without any basis in medical science. And it is up to the arbitrators whether to believe that. In this case, two out of the three believed that the medical treaters. The system worked. That's what it means to say that reasonable minds differ. Could I respond to the arguments that there were bills, medical bills, that were really not in dispute, but State Farm failed to pay them? I'm glad you asked that question. I'd refer the Court's attention to the defendant's second request for admissions of fact and genuineness of documents. This is in Common Law Record, page 412, where we listed all of our payments. It's actually found in the appendix to the appellant's brief. Every bill that was submitted to us, we paid. St. John's, it's up to them to tell us how much we owe, and we paid those bills. And we have a list of every single payment, the date paid and the total amount. In the end, we ended up paying $21,357. We paid for doctors to review her lower back pain and her hip pain. The only thing we didn't pay for was the hip replacement surgery. That's what was left out. I think another aspect of the case was that counsel took us to task for withholding the IME report for four months. We did send it back for a redo, and the reason was the carpal tunnel syndrome. That's all. We wanted further clarification on that. We got that clarification, and within six weeks, we had a plaintiff's counsel. He said four months. I thought he argued two years. My recollection is he argued a four-month delay. If you'll check the dates, you'll find that when he made his request, we got him the full report within six weeks of his last request. He claims that this is a violation of Supreme Court rules, discovery rules. Those rules apply when we have a civil case on file. In this case, there was no civil case on file, so the Supreme Court rules do not govern that. Regardless, once plaintiff made his demand for arbitration, I think it should be noted that it took him ten months before he even scheduled the deposition of his treating physician. He waited another couple of months before he scheduled the deposition of our IME physician. We have almost a year's worth of delay that is directly attributable to the plaintiff. To the extent that there was any delay in this case, we submit that the plaintiff's counsel is equally responsible for that. Jurors are not required to leave their common sense at the doorstep, and that's what we are dealing with in this case. The plaintiff came forward with a very weak case, a case which on its face seemed to make no sense. We had every right to arbitrate that and dispute it. We did, we lost, we paid the policy limits. I think one case that the plaintiff's counsel relies upon, I think, is really telling here. It's the Murdahl case. In Murdahl, the insured claimed that his car was stolen. Foreign Net Insurance said, well, they took his polygraph and he failed it. He failed it a couple of times. When they asked him under a polygraph, are you trying to defraud the insurance company, the meter went off the scale. Everybody knew that that car had not been stolen, but it's also based on completely inadmissible evidence. And Foreign Net Insurance decided to litigate it anyway. And they lost at arbitration, and then even though they had absolutely no evidence, they went and they appealed that arbitrator's decision to the circuit court. Now, in that case, the court properly ruled that section 155 damages were penalties, were appropriate. Here, we're dealing with a completely different situation. When you say, someone stole my car, on its face, does that make sense? Is it a possibility? Of course it is. Here, we're dealing with a situation where my arthritic symptoms were aggravated, but they weren't aggravated for a full 15 months after a minor auto collision. Anybody would look at that and say, wait a minute, that can't be right. And then we look at the depositions of history. Here's my problem with anyone would look at that and say it can't be right. I agree, until you have medical experts who say, oh, it is right. And you say, well, surely that still can't be right. I want an IME, and we get an IME, and you still haven't told your chosen medical expert hasn't presented anything to dispute to others who support this claim. At that point, how is it not vexatious delay to adhere to the position of, well, we don't have to believe these doctors anymore. We don't have to believe the doctors because they gave no basis for their opinion. They said, here, this is my opinion. We have two different ones connected here. So they can just be disregarded. And why is it the disregard of those medical opinions that question the reasonableness of it a question for the jury to decide? It's certainly a question for the arbitrators to decide. No, no, you keep referring to arbitrators, and I keep saying, Mr. Unrath, that's not the issue before us. The issue before us is whether it was vexatious and unreasonable is for a jury to decide that question. The question is, was it vexatious and unreasonable for us to bring this to arbitration? That's the question. To bring it to arbitration in the absence of any evidence conflicting with their expert testimony showing it was connected. Your counsel has just conceded that you can win a case by beating up on your opponent's case. That's what Judge Kavanaugh said. He said when your opponent's case is so weak, there's nothing wrong with relying on that weakness. It's so weak, we have two experts who reach this conclusion, and we have no one on the other side. And as a matter of law, their vexatious claim can't stand. That's what you're saying, isn't it? Yes, absolutely. Because it's just so weak. As a matter of law, no jury. I mean, if this were the evidence presented at trial, direct the verdict. The question is, is there any evidence that our claim was feigned, that we just made this up, that it had absolutely no basis? And the fact is, it did have a basis. Why is that a jury question, Mr. Unrath? Why is that a jury question? Let a jury decide. If you had basis, let a jury decide that. Your Honor, this can be and was ruled on as a matter of law. We raised a bona fide dispute here. We did not make up this claim. So a jury's not going to be permitted to decide this in your judgment? Absolutely not, Your Honor. It can and should be decided as a matter of law. Is there no further questions, Your Honor? Thank you. Thank you. Rebuttal, please. Thank you. Thirty-seven years of experience tells me I should shut up. But to show you that I've not learned a whole lot in 37 years, I'll say a couple of things. It was said that the Supreme Court rules don't apply to the arbitration. That's incorrect. The Supreme Court rules do apply to arbitration. The rule that you have to give a medical independent report within, I think, 28 or 30 days applies. They didn't give me the medical report until more, after their redos that they refused to give me, until more than that after they had redone it. It was four months. That's what I said, four months of delay, which when you're calling and writing and asking, that's a long time. The bills that were initially from St. John's Hospital were stipulated prior to arbitration as being reasonable, necessary, and occasioned as a result of the accident by the defendant, and they still weren't paid. Before we ever went to arbitration, they signed a stipulation, it's in the record, that those bills, that $2,400 and so dollars were all, should have been paid, and they're saying in their brief now they should have been paid, but they weren't paid. The Coronet case stands for the proposition that when you go to a hearing or trial, you have to have some evidence. As we discussed, absent Dr. Meade's affidavit of failed BASC syndrome, they have none. They went to trial and arbitration with no evidence, and the Coronet case says that's bad faith. So unless there's any other questions, that's all I have. I see none. Thanks to both of you. The case is submitted. The court stands in recess.